# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AUTOFORM ENGINEERING GMBH,　　　　　CASE NO. 10-14141

　　　　PLAINTIFF,　　　　　　　　　　　ARTHUR J. TARNOW
v.　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE

ENGINEERING TECHNOLOGY　　　　　　　R. STEVEN WHALEN
ASSOCIATES, INC.,　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

　　　　DEFENDANT.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [74] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [76]

## I. Introduction

Before the Court are Defendant's Motion for Summary Judgment on Patent Invalidity [74], and Plaintiff's Cross-Motion for Summary Judgment on Infringement [76].

On October 30, 2013, this Court entered an Opinion and Order [67] deciding all claim construction issues presented in the parties' Markman briefs. The parties then filed the above cross-motions for summary judgment on March 13, 2014. On March 18, 2014, this Court entered a stipulated order voluntarily dismissing only certain portions of the claims presented by the parties.

For the reasons stated below, Defendant's Motion for Summary Judgment on Patent Invalidity [74] is DENIED, and Plaintiff's Cross-Motion for Summary Judgment on Infringement [76] is also DENIED.

## II. Background

On May 11, 2001 Plaintiff AutoForm Engineering GMBH, filed Patent Application 10/275,633 ('633 Application). The '633 Application set out a method for creating addendum zones of tools for the manufacture of formed sheet metal parts. The U.S. Patent & Trademark Office (PTO) rejected Plaintiff's claims 1-14 for failing to assert "any new and useful process, machine, manufacture, or composition of matter" under the criteria of patentability set forth in 35 U.S.C. §101.

On March 1, 2007, Plaintiff appealed to the Board of Patent Appeals and Interferences (BPAI), arguing that the invention was directed to a new and useful process yielding tangible, real-world results. On November 19, 2008, while the appeal was still pending, Plaintiff filed Patent Application 12/274,146 ('146 Application) as a divisional application of the appealed '633 Application for an accelerated review process. In the statement of utility in the '146 Application, Plaintiff stated that the invention enabled the efficient and optimized design of addendum surfaces for tools used in sheet metal formation. The '939 Patent based on the '146 Application was issued on November 24, 2009.

On May 27, 2010, the BPAI affirmed the Patent Examiner's rejection of the '633 Application, finding that Claim 1, and all dependent claims, were directed to non-patentable subject matter. The BPAI stated that the methods proffered by Plaintiff could be performed solely as a mental process.

Following the granting of the '939 Patent and the BPAI's rejection of the '633 Application, Plaintiff submitted a new set of claims in the '633 Application. These new independent claims added to the '633 Application were identical to dependent Claim 2 of the already issued '939 Patent, with the addition of the ability to configure the program to allow a computer to execute the steps of designing a particular tool. This amended patent application was thereafter assigned to the Patent Examiner that granted the '939 Patent. The Patent Examiner granted this new set of claims within the '633 Application, and the '929 Patent was issued on February 22, 2011. As such, the major distinction between the '939 Patent and the subsequent '929 Patent is the addition of the computer's execution of the design.

On October 15, 2010, Plaintiff filed its Complaint [1], alleging that Defendant Engineering Technology Associates (ETA) is infringing on the '939 Patent by making, using, selling, and/or offering to sell certain software. On March 16, 2011, Plaintiff filed a Second Amended Complaint [21], adding an identical claim against Defendant ETA as to the '929 Patent. These patents are related and share a common specification.

In general, the patents pertain to computer software that is used to create a tool, and the tool itself, which is then used to form sheet metal into different objects, primarily automobile parts. The patents focus on the creation of the die portion of this tool. The die is custom made for each specific automobile part that is to be formed from the sheet metal. The die is composed of a component area, an addendum area, and a binder area.

3

The patent claims now at issue revolve around the creation of this addendum area, including the use of sectional profiles to create this addendum area. Plaintiff contends that Defendant's software infringes on its patents, while Defendant contends that Plaintiff's patents cover basic concepts in the field and are therefore not patent-eligible.

### III. Standard of Review

"[S]ummary judgment is as appropriate in a patent case as in any other," when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Avia Group Int'l, Inc. v. LA. Gear Calif., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988)(quoting *Spectra Corp. v. Lutz*, 839 F.2d 1579, 1518 n.6 (Fed. Cir. 1988)).

### IV. Analysis

*B. Invalidity – Defendant's Motion for Summary Judgment [74]*

Defendant's Motion for Summary Judgment [74] focuses on the invalidity of both the '929 and the '939 Patents. Defendant first argues that the '939 Patent not pass the "machine-or-transformation" test of patentability. Then, Defendant asserts that the '939 does not cover patentable subject matter under U.S.C. § 101 as it pertains to an abstract idea. Finally, Defendant then argues that the patents are invalid due to the existence of prior art under 35 U.S.C. § 102.

4

Plaintiff argues that Defendant has waived all arguments of invalidity under U.S.C. § 101 because Defendant failed to make such an argument within the "Preliminary Invalidity Contentions." However, because the Court finds Defendant's arguments as to invalidity unavailing, it need not consider the issue of waiver here.

### 1. "Machine-or-Transformation" Test

According to the machine-or-transformation test, a claim can be analyzed to determine whether (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing. *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008)(Bilski I). Specifically, the "use of a specific machine-or- transformation of an article must impose meaningful limits on the claim's scope to impart patent eligibility." *Id.* at 1396. The "machine-or-transformation" test is not a necessary test and a patent need not pass this test in order to meet the threshold requirements of patentability under 35 U.S.C. § 101.

As the '939 Patent pertains to the method of the design of addendum surfaces, rather than the literal and physical transformation of an article, it does not appear to meet the two-prongs of the "machine-or-transformation" test. However, the application of this test itself is not sufficient to invalidate the '939 patent and Defendant's argument is unavailing.

2. Abstract Idea

Defendant then argues that both the '939 and '929 Patents are not patent-eligible because they pertains to unpatentable abstract ideas, which is again impermissible under 35 U.S.C. § 101.

The subject matter eligibility requirement of 35 U.S.C. §101 states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. §101. Thus, Section 101 provides four independent categories of inventions that are eligible for patent protection: processes, machines, manufactures, and compositions of matter. *Bilski v. Kappos*, 130 S.Ct. 3218, 3225 (2010) (Bilski II). In interpreting 35 U.S.C. §101, the Supreme Court has expressly excluded three categories from patent protection which are generally referred to as the judicial exceptions to subject matter eligibility: "laws of nature, physical phenomena, and abstract ideas." *Id.* at 3225. Defendant focuses on the last of these three judicial exceptions.

Defendant extensively argues that the patents at issue address abstract ideas, placing particular emphasis on the argument that the methods involved simply describe mental processes. *See Cybersource Corp. v. Retail Decisions Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011). While the patent may include or rely on some basic concepts in the

design of sheet metal forming tools, the patents also include numerous limitations that narrow the scope of the patent. For example: (1) smoothing an irregular component edge; (2) filling in a fill surface; (3) forming a smooth component edge; (4) where the fill surface runs into the predefined component geometry by a continuous tangent; (5) arranging sectional profiles along the smooth component edge; (6) avoiding an overlap or intersection condition between sectional profiles; (7) parameterizing the sectional profiles by the means of profile parameters; (8) the profile parameters being scalar values; (9) laterally interconnecting the sectional profiles by a continuous surface to form the geometry of the addendum zone of the tool; and (10) where the addendum zone complements the component geometry in the edge zone and runs into the component and the binder with a continuous tangent. As such, Defendant has failed to overcome the presumption of patentability with clear and convincing evidence. *See Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1342 (Fed. Cir. 2013); *see also SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) ("[A] moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise.")

Defendant goes on to argue that the fact that the '929 Patent translates these alleged abstract ideas to a generic computer automation is insufficient to render the subject matter patent-eligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357, 189

(2014)("[T]he method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention.") However, because the '939 Patent covers more than a mere abstract idea, this argument is unpersuasive here.

### 3. Prior Art

Finally, Defendant argues that the '929 and '939 Patents are invalid as they do not meet the requirements of 35 U.S.C. § 102, as there is prior art – the UG16 Help File – that "anticipated" these patents.

Section 35 U.S.C. § 102 defines the novelty standard for a patent and states that a patentee shall be entitled to a patent unless: (a) the claimed invention was "described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention" or (b) if "the invention was . . . in public use or on sale in this country" more than one year before the filing date of the patent application. 35 U.S.C. § 102.

A claim not satisfying the novelty condition of patentability, as defined in Section 102 of the Patent Act is said to be "anticipated." *See Oakley Inc. v. Sunglass Hut Intl.*, 316 F.3d 1331, 1339 (Fed.Cir. 2003). The purpose behind Section 102 is to bar a person from patenting a device that is already in the public domain. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148 (1989).

A printed publication will anticipate a claim under §102(b) if "each and every [claim] limitation is found either expressly or inherently in a single prior art reference."

*Oakley Inc. v. Sunglass Hut Intl.*, 316 F.3d 1331, 1339 (Fed.Cir. 2003). In addition, while there is a presumption of validity to issued patents, the presumption is by no means conclusive or absolute. This is especially true where a prior art reference was not considered by the PTO during the patent's prosecution, that reference "may 'carry more weight' . . . than evidence previously considered by the PTO," and may "go further toward sustaining the attacker's unchanging burden.'" *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012)

The UG16 Help File as presented by Defendant is a prior printed publication that accompanied the 1999 commercial release, sale, and public use of a separate software program known as Unigraphics Solutions, Version 16. The UG16 program was released at least as early as December 18, 1999. The UG16 Help File provides a wide array of subfiles and user guidance, including the Die Engineering content which itself includes at least thirteen even more detailed and delineated files and user options. Defendant argues that this UG16 Help File describes, recites, and practices all the "steps for forming the shape of the addendum" included in both of Plaintiff's patents.

After reviewing the UG16 Help File, the Court is not convinced that Defendant has met its burden by showing that all claimed elements of Plaintiff's patents are present in the Help File. For example, the Help File does not appear to make specific mention of the "smoothing" and "filling" functions described in the patents. Therefore, some questions

of material fact remains as to whether, and to what extent, this prior art – the UG16 Help File – anticipates both the '929 and '939 Patents.

Therefore, Defendant's Motion for Summary Judgment [74] is DENIED.

*B. Infringement - Plaintiff's Cross-Motion for Summary Judgment [76]*

> Direct patent infringement occurs under 35 U.S.C. § 271(a) when someone (1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent. Determining whether someone is making, using, or selling a patented invention requires a finding that the patent claim covers the alleged infringer's product or process. The determination that a patent's claims cover a specific device is often referred to as literal infringement.

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 415 (6th Cir. 2012)(internal quotation marks and citations omitted).

In addition, in order for an accused product to infringe a patent "every limitation set forth in a claim [must be found] in [the] accused products or process or by a substantial equivalent." *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991). Finally, infringement must be shown by a preponderance of the evidence. *Seal-Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 843 (Fed. Cir. 1999).

### 1. Independent Claim 1

Plaintiff's arguments of literal or direct infringement presented in the Motion for Summary Judgment [76] focus only on its claims as to the '929 Patent. Specifically,

Plaintiff assert that Defendant's software[1] infringes on two limitations within Claim 1 – or the independent claim – of the '929 Patent. Defendant has previously stipulated that all other limitations of Claim 1 of the '929 Patent are in fact present in Defendant's software. These two limitations are detailed in turn.

> a. "**smoothing** an irregular component edge by **filling in a fill surface** whereby a smooth component edge is formed and the fill surface runs into the predefined component geometry by a **continuous tangent**"

Plaintiff simply asserts that the first portion of this limitation from the '929 Patent – "smoothing" and "filling in a fill surface" – is present in Defendant's software because the software provides various "Outer Smooth" functions that are used to smooth the outer boundary of a selected part. As an example, one of the available Outer Smooth functions is the "Roller" function, which "allows a user to roll a cylinder with a defined radius along the boundary and fill the gaps between the part boundary and the cylinder."

Plaintiff then argues that using this Court's construction of the term "continuous tangent," the second portion of this limitation must be interpreted to mean: "the fill surface meets the component along a common boundary line and, for any point on this line, the slope of the fill surface and the slope of the component are the same." Based on

---

[1] Defendant concedes that version 5.7.3 of its software is representative of all other versions of the software that are accused of infringement, and therefore the arguments focus on this version. In addition, Plaintiff relies on the User Manual for this software in order to show that the software includes the limitations of the '929 Patent.

this interpretation, Plaintiff asserts that the limitation is present in Defendant's software as part of the "Keep Tangent" function, which "enables the user to keep tangency between the existed (sic) surfaces as meshes and surfaces as well as meshes generated by smooth operation."

      b. "form[ing] the geometry of the addendum zone of the tool, whereby said addendum zone complements the component geometry in the edge zone and runs into the component and the binder with a **continuous tangent**"

As to this second limitation within the independent Claim 1, Plaintiff again focuses on the "continuous tangent" language, as it applies to the slopes between the edge zone, component, and binder areas. Plaintiff argues that the User Manual describes that an addendum generated from a "Type 1" master sectional profile "will produce a tangential transition from the part boundary to the binder surface." Plaintiff contends that this portion of the software infringes on the limitation.

The Court finds *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108 (Fed. Cir. 2002) particularly useful to its analysis here. In *FantasySports Props.*, the Federal Circuit Court held that:

> the software underlying a computer program that presents a user with the ability to select among a number of different options must be written in such a way as to enable the computer to carry out the functions defined by those options when they are selected by the user. Therefore, although a user must activate the functions programmed into a piece of software

by selecting those options, the user is only activating means that are already present in the underlying software. Otherwise, the user would be required to alter the code to enable the computer to carry out those functions. Accordingly, in order to infringe the []patent, the code underlying an accused [software] must be written in such a way as to enable a user of that software to utilize the function [the infringing function], without having to modify that code. In other words, an infringing software must include the [means for infringement] regardless whether that means is activated or utilized in any way.

*FantasySports Props.*, 287 F.3d at 1118.

Here, there remain substantial questions of fact as to whether Defendant's alleged infringing software may in fact enable users to utilize the software in an infringing manner.

### *2. Dependent Claims 2, 4-6, and 7-10*

It is a well-settled rule of patent law that, if the accused product does not infringe the independent claim, than it cannot infringe on the dependent claims that follow from the central independent claim. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 n.9&10 (Fed. Cir. 1989). Because Plaintiff has not met its burden as to infringement and because questions of fact remain as to the independent Claim 1, the Court need not address the merits of the Dependent Claims here.

As such, Plaintiff's Cross-Motion for Summary Judgment[76] is DENIED

### V. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment on Patent Invalidity [74] is DENIED, and Plaintiff's Cross-Motion for Summary Judgment

13

on Infringement [76] is also DENIED.

Therefore,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Patent Invalidity [74] is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment on Infringement [76] is DENIED.

**SO ORDERED**.

s/Arthur J. Tarnow
ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 5, 2014